THE LEHIGH AND HUDSON RIVER RAILWAY COMPANY, *ET AL.*, APPELLANTS, v. DEPARTMENT OF PUBLIC UTILITIES, BOARD OF PUBLIC UTILITY COMMISSIONERS, STATE OF NEW JERSEY, RESPONDENT.

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, BROTHERHOOD OF RAILROAD TRAINMEN, ORDER OF RAILWAY CONDUCTORS AND BROTHERHOOD OF LOCOMOTIVE ENGINEERS, ADDITIONAL APPELLANTS.

Argued November 30, 1953—Decided February 1, 1954.

*Mr. Raymond J. Lamb* argued the cause for the appellants (*Messrs. Emory, Langan & Lamb*, attorneys; *Messrs. Charles W. Hutchinson* and *Samuel Lyon*, on the brief).

*Mr. John E. Toolan* argued the cause for the additional appellants (*Messrs. Toolan, Haney & Romond*, attorneys).

*Mr. John R. Sailer*, Deputy Attorney-General, argued the cause for the respondent (*Mr. Theodore D. Parsons*, Attorney-General, and *Mr. Frank H. Sommer*, attorneys).

The opinion of the court was delivered by

JACOBS, J.    This is the companion case referred to in the opinion in *Pennsylvania Railroad Company v. Department of Public Utilities*, 14 *N. J.* 411 (1954).

■ Paragraph I of the board's order directs that the railroads named therein establish as minimum practice the "physical examination of enginemen and firemen in road service at least once a year," with more frequent examination at the discretion of the railroad's medical director if significant abnormality is found.    One railroad examines all of its employees annually; others examine enginemen and firemen qualified as enginemen at least once a year; others examine older firemen annually though they are not qualified as enginemen; and still others examine enginemen and all firemen bi-annually with increased examinations for older employees.    In many instances the railroad's requirements were established long ago and were never brought up to date. Thus, one medical director, when asked why his railroad required annual examinations for enginemen and bi-annual examinations for others, replied that he could not say since he was not there when the practice was inaugurated in 1902. Similarly, the Association of American Railroads' recommendation of bi-annual examination was adopted over 25 years ago; it has not been altered since.    Much has been learned in recent decades as to the value of annual physical examinations and, as stated in the Pennsylvania case, we are satisfied that the board's action in requiring them of enginemen and firemen in road service was well within its statutory authority.

■ Paragraph II of the board's order directs the railroads to adopt and enforce a minimum rule requiring conductors, trainmen, enginemen and firemen in road service, upon resuming duty after an absence of 15 days or more, to be examined as to their knowledge and understanding of operating rule changes which have occurred in their absence. One railroad requires enginemen and conductors, after 15 days' absence, to submit their binders for examination to insure that they contain all general orders then in effect;

others require engineers and conductors in road service, before resuming duty after an absence of 30 days, to be examined by a trainmaster or road foreman as to their knowledge and understanding of changes; and still others simply have a general requirement that conductors and enginemen, absent for 30 days, familiarize themselves with rule changes. The need for some minimum precaution seems clear and we believe that paragraph II, modified in the same manner as that set forth in the Pennsylvania case, will largely achieve the board's objective and constitute action well within its statutory authority.

Paragraph III of the board's order directs the railroads to enforce a minimum rule requiring enginemen and firemen in road service, on resuming duties after an absence of three months or more, to be examined on the physical characteristics of the road over which they will operate. One railroad requires that an engineman in road passenger service, absent for 90 days or more, make his first run under the supervision of a road foreman of engines; another requires engine crew members, absent for 120 days, to make a trip over the territory and be examined on rules and physical characteristics; and several others require an engineman who has not been over the territory for six months or more to be examined on physical characteristics before his first trip. The need for some minimum precaution seems clear and we believe that paragraph III, modified in the same manner as that set forth in the Pennsylvania case, will largely achieve the board's objective and constitute action well within its statutory authority.

Paragraph IV requires the railroads to adopt and adhere to the practice of controlling automatic block signals on the approach to or in advance of track affected by temporary speed restrictions so that the best indication they can possibly display is "Approach" when the restriction is equivalent to medium speed or less and when the restriction is imposed because of resort to use of temporary support of track, temporary change in alignment of track, or other comparable conditions. It must be set aside and the ensuing

paragraphs V, VI, VII and VIII must be remanded for further proceedings before the board for reasons similar to those expressed in the opinion in the Pennsylvania case.

The appellants urge that the board's order should be set aside in its entirety because it went beyond the strict record before it. Unlike the Pennsylvania case, the board's decision in the instant matter did not specifically state that it had taken official notice of the Attorney-General's *Report* and the *Findings, Recommendations and Order* in Docket No. 5473, although it did refer to the latter document's recommendations for steps to be taken by the Pennsylvania. It pointed out, however, that the record contained "very little of a constructive nature for promoting greater safety in the operation of railroads" and that it must therefore depend to some extent on its "general knowledge of operating rules and practices" of the railroads and on the experience "accumulated over the years" in the investigation of accidents, including that at Woodbridge and of near accidents which have occurred in the past. The hearing was replete with evidence as to railroad practices and contained references to accidents including the Woodbridge disaster; it may be doubted whether the board's reference to its general knowledge actually constituted more than the application of its administrative expertness to the railroad practices and matters of general understanding fairly inferable from the record. See *Elizabeth v. Board of Public Utility Commissioners*, 99 *N. J. L.* 496, 497 (*E. & A.* 1924); *In re Port Murray Dairy Co.*, 6 *N. J. Super.* 285, 296 (*App. Div.* 1950). *Cf. Davis, Administrative Law*, 476, 503 (1951). In any event, it appears clear that the railroads have not been in anywise prejudiced. They were aware of the Woodbridge wreck and participated fully in ensuing conferences which the board conducted. The board's order, to the extent that we have sustained it, rests entirely on matters of common knowledge and evidence strictly in the record to which it properly applied its specialized judgment; under the circumstances it would pervert the very nature of the administrative process and impair the public interest to vacate the

entire order on the asserted ground. See *United States v. Pierce Auto Freight Lines*, 327 *U. S.* 515, 66 *S. Ct.* 687, 90 *L. Ed.* 821 (1946).

We find no merit in the remaining contentions advanced by the appellants. See *Pennsylvania Railroad Company v. Department of Public Utilities, supra.* The order of the Board of Public Utility Commissioners is modified and the cause is remanded for further proceedings in accordance with the principles set forth in the Pennsylvania case and in this opinion.

HEHER, J. (dissenting in part). I would modify the judgment here in accordance with the views expressed in my dissent in *Pennsylvania Railroad Co. v. Department of Public Utilities*, this day decided, 14 *N. J.* 411 (1954); otherwise, I concur in the reasoning and result of the opinion of Mr. Justice JACOBS.

*For modification and remandment*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For modification*—Justice HEHER—1.